IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUMPFLY, INC., an Illinois corporation, ) | |
| ) | |
| Plaintiff, ) | No. 10 C 0385 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| BJORN TORLING and PATRICK BURKE, ) | |
| individuals, and WINDY CITY STRATEGIES, ) | |
| INC., an Illinois corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff originally filed a four-count complaint in state court. After additional counts were added, including one alleging a violation of the Lanham Act, 15 U.S.C. § 1125(a), the instant case was removed to this court. Plaintiff, JumpFly, Inc., now brings a ten-count complaint against two former employees, Bjorn Torling ("Torling") and Patrick Burke ("Burke"), and their current employer, Windy City Strategies, Inc. ("Windy City"), alleging rescission of a settlement agreement (Count I), breach of contract (Counts II and V), violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. (Count III), violation of the Lanham Act (Count IV), intentional interference with a contract (Counts VI, VII and VIII), and conspiracy to commit intentional interference with a contract (Counts IX and X). Defendant has moved to strike[1] plaintiff's prayer for injunctive relief in Counts II, III and IV and dismiss in entirety Counts I, VI, VII, IX and X under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below, the motion is granted in part and denied in part.

---

[1]Defendant originally moved to dismiss plaintiff's prayer for injunctive relief in Counts II, III and IV. Prayers for relief are not claims, however, and cannot be dismissed pursuant to Rule 12(b)(6). The Court will consider this as a motion to strike plaintiff's prayer for injunctive relief under Rule 12(f). *See v. Strunk*, 2006 WL 2916819, at *9 (C.D.Ill. 2006).

**FACTS**

The facts alleged in the amended complaint are taken as true for purposes of the instant motions. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

Plaintiff hired Torling as an account manager on September 1, 2005, and on that date Torling signed an employment and non-compete agreement ("Torling Non-Compete Agreement"). As part of the Torling Non-Compete Agreement, Torling was prohibited from, among other things, inducing business from any customer of plaintiff, encouraging anyone to leave plaintiff's employ or otherwise soliciting any employee of plaintiff, and engaging in any competitive business in any geographic territory in which plaintiff was rendering services. Torling worked as an account manager with plaintiff from September 1, 2005 to December 14, 2007, providing pay-per-click ("PPC") advertising to plaintiff's customers.

During Torling's employment with plaintiff, Torling allegedly created and ran a side business to provide PPC advertising services to certain customers of plaintiff, without plaintiff's knowledge or consent. At some point shortly after February 2007, while still employed with plaintiff, Torling entered into a business relationship with Silverback Strategies LLC ("Silverback"), in which he provided PPC advertising to Silverback.

Plaintiff fired Torling on December 14, 2007, based in part on information that Torling had used plaintiff's computers to visit news, sports, and adult content websites, in violation of plaintiff's policy. Further investigation revealed that Torling might have been using plaintiff's resources to solicit plaintiff's customers on behalf of competing businesses. Plaintiff was aware that Torling was operating a side business when he was terminated.

2

Plaintiff's attorneys sent a cease and desist letter to Torling to demand he stop all conduct in violation of the Torling Non-Compete Agreement. Torling's attorneys responded to the letter and plaintiff and Torling negotiated a settlement agreement that provided for modifications to the Torling Non-Compete Agreement to allow Torling to engage in a competing business. Among other provisions, the settlement agreement prohibited Torling from soliciting or accepting business from any of plaintiff's current or former customers, prohibited Torling from soliciting or otherwise engaging any of plaintiff's employees, and required Torling to give advance written notice to plaintiff of where he was employed. Around October 21, 2008, Torling organized Windy City. Prior to January 30, 2009, Torling left Silverback, where he was then working. At essentially the same time that he left Silverback, he caused Windy City to begin providing the same or similar services as provided by plaintiff. Plaintiff never received notice of the change in Torling's employment.

Plaintiff hired Burke on October 13, 2006. Burke signed an employment and non-compete agreement ("Burke Non-Compete Agreement") that included a provision entitled Competition and Solicitation, which essentially contains the same restrictions as those found in the Torling Non-Compete Agreement. Plaintiff specifically advised Burke, both during his employment and after, that it would be a violation of Torling's Non-Compete Agreement for Torling to solicit plaintiff's employees to work in a competing business with him. Torling and Burke had weekly meetings between January 2008 and January 30, 2009, at which Torling repeatedly and intentionally solicited Burke to leave plaintiff's employment and become a part-owner of Windy City. Burke quit his job with plaintiff on January 30, 2009. In April 2009 Burke became an employee of Windy City.

3

On June 23, 2009, plaintiff searched Google for the term "jumpfly." The first sponsored link that appeared in the results was an advertisement for Windy City. Plaintiff determined that Windy City contracted with Google in order to ensure that its website would appear ahead of plaintiff's when the term "jumpfly" is entered into the search engine. Plaintiff's counsel brought the search engine results to the attention of defendant Torling's counsel. The sponsored link was removed.

## **DISCUSSION**

Defendants Torling and Windy City have moved to dismiss certain counts of plaintiff's amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Such motions challenge the sufficiency of the complaint, not the merits, and should be granted only if plaintiff's allegations fail to raise a plausibility of success. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-64, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To state a claim on which relief can be granted, a plaintiff must satisfy two conditions: (1) the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009); *Twombly*, 550 U.S. at 555; *EEOC v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

<u>Defendants' Motion to Strike the Prayer for Injunctive Relief in Counts II, III, and IV</u>
<u>Count II</u>

Defendants argue that plaintiff's request for injunctive relief in Count II should be stricken. Count II of the Amended complaint is against Torling for a breach of the Torling Non-

4

Compete Agreement. Plaintiff seeks, in addition to damages and other monetary relief, to enjoin defendant's competitive business conduct. Defendants argue, however, that such an injunction is unavailable to plaintiff because the non-compete period, as defined in the Torling Non-Compete Agreement, has already run its two-year course. Defendants assert that plaintiff has failed to allege any basis in law or equity to justify the injunction of Torling's competitive conduct because they failed to find any law to support the proposition that competitive conduct can be enjoined beyond the period provided for in the relevant non-compete agreement.

Plaintiff points to an Illinois Appellate Court decision stating that "in certain instances injunctive relief might be appropriate even after the expiration of the contractual period[,]" *Electronic Support Systems, Inc. v. Schattke*, 70 Ill. App. 3d 469, 471 (Ill. App. Ct. Dist. 1 1979). A closer reading of the case, however, suggests that defendant's position is more tenable. Generally, enjoining a defendant's conduct beyond the non-compete period constitutes an unreasonable restraint on trade. *See Id.*

In *Electronic Support Systems*, the defendant was employed by the plaintiff and signed an employment contract containing a covenant not to compete for 18 months after termination of his employment. *Id.* at 470. The defendant allegedly breached the agreement during this 18-month non-compete period. *Id.* The plaintiff in *Electronic Support Systems* then attempted to enjoin the competitive conduct of the defendant beyond the expiration of the covenant not to compete, arguing that because the breach occurred during the non-compete period, the plaintiff should be entitled to enforcement after the non-compete period had expired. *Id.* at 470. Additionally, the plaintiff learned of the breaches more than five months before seeking injunctive relief. *Id.* at 471. The Illinois Appellate Court, based on these facts, determined that

enjoining the defendants' conduct beyond the non-compete period would be an "unreasonable restraint of trade." *Id.* at 471 (quoting *Murphy v. Murphy*, 328 N.E.2d 642, 644 (Ill. App. Ct. Dist. 5 1975)).

In the instant case, Torling signed a non-compete agreement, prohibiting him from competing for a period of two years following his termination. Torling allegedly breached this non-compete agreement during that two-year period. Just as the plaintiff argued in *Electronic Support Systems*, plaintiff in the instant case argues that because the breach occurred during the non-compete period, plaintiff should be entitled to enforcement after the non-compete period has expired. *Id.* at 470. Also, in the instant case plaintiff did not seek injunctive relief until seven months after it became aware of the alleged breach. Consistent with the Illinois Appellate Court's reasoning in *Electronic Support Systems*, that an injunction based on such facts would amount to an unreasonable restraint of trade, this court concludes that plaintiff is not entitled injunctive relief. *Id.* at 471. Defendant's motion to strike plaintiff's prayer for injunctive relief is granted with respect to Count II.

Counts III and IV

Defendants next argue that plaintiff's request for injunctive relief in Counts III and IV should be stricken. Counts III and IV allege that defendants used the term "jumpfly" in connection with advertisements on Google's website in a way that was intended to cause confusion about any connection or affiliation between Windy City and plaintiff, thus violating the Illinois Deceptive Trade Practices Act and Lanham Act. Defendants argue that plaintiff's own allegations, with regard to the violation of the Illinois Deceptive Trade Practices Act and Lanham Act, assert that defendants have ceased the conduct that plaintiff now seeks to enjoin.

Plaintiff responds by arguing that without discovery they will not and cannot know whether defendants are continuing or will continue to use the term "jumpfly" or otherwise attempt to cause confusion between Windy City and plaintiff.

A defendant's motion to strike a prayer for relief is premature if such relief is provided for by law. *Aspen Marketing Services, Inc. V. Russell*, 2009 WL 4674061 (N.D. Ill. 2009). In the instant case, injunctive relief is a remedy available under the Illinois Deceptive Trade Practices Act and Lanham Act. Therefore, the motion is denied as premature.

Defendants' Motion to Dismiss Counts I, VI, VII, IX, and X

Count I

In Count I, plaintiff seeks to rescind the Settlement Agreement between Torling and plaintiff, arguing that Torling breached the Settlement Agreement by substantial nonperformance. Specifically, plaintiff alleges that Torling solicited and engaged in business with Burke while Burke was employed by plaintiff and shortly thereafter, and that Torling failed to provide plaintiff with notice of his change in employment, both of which are prohibited by the Settlement Agreement.

Defendants argue that Count I fails in its entirety because plaintiff failed to allege a breach of the Settlement Agreement, and even if a breach were alleged, such a breach would not support rescission. Plaintiff's Amended complaint, however, explicitly alleges that Torling breached the Settlement Agreement by soliciting and engaging in business with Burke while Burke was employed by plaintiff and by failing to provide plaintiff with notice of Torling's change in employment. Because both of these activities are covered by the Settlement Agreement, defendants' first argument is incorrect. It is premature to determine whether

Torling's alleged breaches could result in rescission. Plaintiff has sufficiently alleged that Torling breached the Settlement Agreement. The court will determine the effect of the breaches in due course. Defendants' motion to dismiss Count I is denied.[2]

Counts VI and VII

Defendants next argue that plaintiff failed to state a claim in Counts VI and VII because plaintiff failed to identify a third party. In Count VI, plaintiff alleges that Windy City intentionally interfered with the Settlement Agreement between Torling and plaintiff by inducing Torling, (a) to solicit and engage in business with Burke, and (b) to fail to provide plaintiff with notice of Torling's change in employment. In Count VII, plaintiff alleges that Burke and Windy City intentionally interfered with the Torling Non-Compete agreement by inducing Torling, (a) to solicit and engage in business with Burke, and (b) to fail to provide plaintiff with notice of Torling's change in employment.

To plead a claim for intentional interference with a contract, plaintiff must allege that the defendant intentionally and unjustifiably induced the breach of a contract between plaintiff and another party. *HPI Healthcare Servs., Inc. V. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 154-155 (1989). Defendants contend that because plaintiff acknowledges that Torling was the President and founder of Windy City at the time of the alleged interference, and the factual allegations suggest that Windy City was acting through Torling in all of the actions relating to the contract breaches, plaintiff has actually failed to identify a third party.

---

[2]Plaintiff asks for sanctions under Rule 11 because, prior to removal, the Circuit Court of Cook County determined that the same allegations were sufficient to allege a breach of contract of the Settlement Agreement. Plaintiff's motion for sanctions, however, is denied without prejudice as premature.

Plaintiff argues that the defendants fail to provide any legal support for the contention that Torling was acting as Windy City, and thus could not interfere with his own contract. Morever, plaintiff alleges that Windy City, rather than Torling, intentionally interfered with the Settlement Agreement and the Torling Non-Compete Agreement, and that without discovery plaintiff cannot determine whether Torling or some other employee or manager of Windy City caused Windy City to interfere with the contracts.

Under the facts alleged, it appears that Torling solicited Burke while Burke was an employee of plaintiff, and that Torling failed to provide plaintiff with notice of his change in employment. There have been no facts alleged, beyond a conclusory statement in the amended complaint, to show that Windy City induced Torling to engage in either of these activities. Further, there is no indication that Burke induced Torling to breach Torling's Non-Compete Agreement. Rather, it appears that Burke was the person who was allegedly induced to breach an agreement. To state a claim, plaintiff must allege that Windy City (and Burke for Count VII) intentionally and unjustifiably induced the breach of a contract between plaintiff and Torling. *Id.* Absent more, there is no indication that either Burke or Windy City induced Torling to engage in any conduct that could constitute a breach of contract. Consequently defendants' motion to dismiss Counts VI and VII is granted.

Counts IX and X

Defendants argue that plaintiff has failed to state a claim in Counts IX and X. In Count IX, plaintiff alleges that Burke and Windy City conspired to commit intentional interference with the Torling Non-Compete Agreement by agreeing to induce Torling to solicit and engage in business with Burke and by agreeing to induce Torling to fail to provide plaintiff with notice of

9

his change in employment. Similarly, in Count X plaintiff alleges that Torling and Windy City conspired to commit intentional interference with the Burke Non-Compete Agreement by agreeing to induce Burke to provide similar services in direct competition with plaintiff and by agreeing to induce Burke to solicit and accept business from plaintiff's former and prospective customers.

A complaint of civil conspiracy must allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act...; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the overt act was done pursuant to and in furtherance of the common scheme." *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 920 (Dist. 1 1999).

Defendants first argue that plaintiff has failed to allege that there was an agreement between two or more *persons*. Specifically, defendants argue that plaintiff actually alleges that an agreement was formed between a corporation and an employee of the corporation, and thus the claim is barred by the Intracorporate Conspiracy Doctrine. This rule provides, in part, that a corporation cannot conspire with itself and as a general rule the acts of agents are the acts of the corporation. *Walker v. Woodward Governor Co.*, 631 F.Supp. 91, 92-93 (N.D. Ill. 1986). Defendants further argue that the amended complaint has failed to allege a conspiracy between two or more persons within the company due to the particularity requirements of Fed. R. Civ. P. 9(b). Defendants then argue, similar to their intentional interference argument, that the only other person alleged to have acted on behalf of Windy City is Torling. Therefore, because Torling cannot be held liable for intentionally interfering with his own contract, he cannot be held liable for conspiring to do so.

Plaintiff argues that defendants' reliance on *Walker* is misplaced. Specifically, plaintiff argues that *Walker* establishes certain exceptions to the Intracorporate Conspiracy Doctrine, including circumstances where the corporate agent is acting outside the scope of his employment. *Id.* at 93-94. Also, plaintiff argues that the instant case is distinguishable from *Walker* because plaintiff has alleged that Windy City was formed for the purpose of competing with plaintiff, and interfering with the Settlement Agreement and the Torling Non-Compete Agreement. Plaintiff also contends that the instant case is distinguishable from *Walker* because, unlike the plaintiff in *Walker*, plaintiff in the instant case has named both the corporation–Windy City–and the agent–Torling.

With regard to Count IX, the conspiracy claim against Burke and Windy City, there are no facts pled that suggest there was any contact between Windy City and Burke, beyond Burke's contact with Torling, that could have lead to Torling's breach of his non-compete agreement. Thus the elements of the conspiracy claim, specifically an agreement and an overt act, have not been adequately pled.

With regard to Count X, the Intracorporate Conspiracy Doctrine applies and is unaffected by the various exceptions referenced in *Walker*. In the instant case, Torling is employed by Windy City, and no facts have been alleged to indicate that he was acting outside the scope of his employment when he solicited Burke to work for Windy City. As alleged, there is at most a conspiracy between a corporation and an employee of that corporation. The fact that plaintiff named both an individual and a corporation in the instant case does not, by itself, circumvent the Intracorporate Conspiracy Doctrine. Defendant's motion to dismiss Counts IX and X is granted.

**CONCLUSION**

For the foregoing reason, this court grants defendants' motion to dismiss in their entirety Counts VI, VII, IX and X and denies defendants' motion to dismiss in its entirety Count I. This court also grants defendants' motion to strike plaintiff's prayer for injunctive relief in Count II and denies defendants' motion to strike plaintiff's prayer for injunctive relief in Counts III and IV. Plaintiff is directed to file a second amended complaint conforming to this opinion on or before June 8, 2010. Defendant is directed to answer the second amended complaint on or before June 28, 2010. The parties are ordered to file a joint status report using court's form on or before July 7, 2010. This matter is set for a report on status for July 14, 2010, at 9:00 a.m.

**ENTER:** May 17, 2010

_____

**Robert W. Gettleman
United States District Judge**